UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:16-CR-055 |
| | ) | |
| RICKY DALE MUNSEY | ) | |

**MEMORANDUM AND ORDER**

In August 2017, this Court sentenced the defendant to a below-guidelines term of 262 months' imprisonment, as authorized by 18 U.S.C. § 3553(e), for conspiring to distribute and possess with the intent to distribute methamphetamine. [Docs. 810, 811]. The defendant is presently housed at USP Terre Haute with a scheduled release date of December 24, 2034. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 14, 2020).

In May 2020, the defendant filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [Doc. 975]. Because nothing in the record at that time indicated that the defendant had exhausted his administrative remedies as required by § 3582(c)(1)(A), the motion was denied. [Doc. 976].

Now before the Court is the defendant's *pro se* motion for reconsideration [doc. 980], which the Court construes as a renewed motion for compassionate release. Appended to the motion is documentation that the defendant did in fact submit a compassionate release request to the warden of his facility, which was denied on May 15, 2020.

The United States has responded in opposition to the renewed motion. [Docs. 985, 990]. The defendant has not submitted a reply within the time allowed by this court's Local

Rules. For the reasons stated below, the defendant's renewed motion for compassionate release will be denied.

## I.   BACKGROUND

As noted, the defendant has renewed his motion for immediate compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018. In his original motion, the defendant sought release based on sleep apnea, "chronic back and knee pain," and his mother's poor health. In his renewed motion, the defendant also discusses the current COVID-19 pandemic.

## II.   DISCUSSION

Section 3582(c)(1)(A)(i) allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant

2

to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Beyond this change, the statute still applies the same requirements to a defendant's motion for compassionate release as previously applied to motions by the BOP Director. *See, e.g., United States v. Beck*, 425 F. Supp. 3d 573, 578-79 (M.D.N.C. 2019).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. *See United States v. McGraw*, No. 2:02-cr-00018-LJM-CMM, 2019 WL 2059488, at *3 (S.D. Ind. May 9, 2019). While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *Id.* at *2 (citations omitted). Moreover, the Court has no reason to believe that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider. *See id.* (concluding likewise).

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A)(i), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether a movant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors,

3

"to the extent they are applicable." U.S.S.G. § 1B1.13.

## A. Exhaustion

In this case, the record demonstrates that the defendant has previously asked the BOP to file a compassionate relief request on his behalf, on or prior to May 15, 2020. Thirty days have passed since that request was received by the warden of his facility. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

## B. Merits

### 1. Extraordinary and Compelling Reasons

The Application Notes to guideline 1B1.13 provide, in material part:

1. Extraordinary and Compelling Reasons.— ... [E]xtraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant. —

> . . .

(C) Family Circumstances. —

> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.— As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

The Court construes the defendant's renewed motion as relying on subsections (A)(ii)(I), (C), and (D). He cites his mother's health, his own sleep apnea and purported back and knee pain, and the COVID-19 pandemic.

The Court finds, as did the BOP [doc. 985, ex. 2], that subsection (C) of application note one to U.S.S.G. § 1B1.13 does not apply to the health of a defendant's parent. That guideline policy statement is expressly restricted to: (1) the death or incapacitation of the caregiver of a defendant's minor child/children; and (2) the incapacitation of a defendant's spouse or registered partner for whom a defendant would be the only available caregiver. A defendant's parent is included in neither of these categories. Thus, subsection (C) does not apply.

Turning to subsection (A)(ii)(I), the defendant's renewed motion is unaccompanied by any supporting medical documentation. The United States' response, however, includes

12 pages of BOP medical records. [Doc. 990]. Those documents confirm that the defendant indeed suffers from "Moderate Obstructive Sleep Apnea" as confirmed by a September 2019 sleep study. The evaluating physician—who is board certified in sleep medicine—prescribed positive airway pressure therapy which she noted is "medically necessary and provides effective treatment of this disorder."

A July 2019 medical examination was "without abnormal findings." In the records before it, the Court cannot discern documentation of the defendant's purported chronic back and knee pain, nor has the defendant directed the Court's attention to any supporting evidence. The Court additionally notes that, in the interview for his 2017 Presentence Investigation Report ("PSR"), the defendant "described his physical health as 'good.'" [Doc. 638, ¶ 87].

Having considered the available medical record, the Court does not find that the defendant's medical conditions *substantially* diminish his ability to provide self-care within the prison environment. His moderate sleep apnea is being treated in a manner which the physician feels is "effective." The defendant's alleged back and knee pain is undocumented as to existence or severity. Accordingly, the defendant's medical conditions do not at this time appear to be of the severity contemplated by guideline 1B1.13's policy statement.

At the defendant's prison, four inmates are currently positive for COVID-19, four others have recovered, and one has died. There have been no positive tests among the prison staff. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 14, 2020). While one fatality is obviously one too many, overall the number of positive cases does not indicate that the virus is running rampant through the defendant's facility. It appears that

6

Case 2:16-cr-00055-RLJ-MCLC Document 995 Filed 07/15/20 Page 6 of 10 PageID #: 7132

that the preventative measures being taken by the Bureau of Prisons, as described by the United States in its response brief, are having an effect. *See, e.g., United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020) (medically managed serious health conditions, paired with a generalized fear of COVID-19, fell short of "extraordinary and compelling reasons" justifying compassionate release).

Lastly, the Court concludes that subsection (D) ("there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)") is also not satisfied in this case.[1] The defendant's mother's health, standing alone, is insufficient. Subsection (C) expressly limits the familial relationships to which the policy statement applies. As such, the "catch-all" subsection (D) should not be used to sidestep the policy statement's express familial limitations found in subsection (C). In any event, the defendant has not shown or even argued that he would be his mother's only available caregiver. For example, according to the PSR, the defendant has three brothers. [Doc. 638, ¶ 83]; *see, e.g., United States v. Marshall*, No. 3:16CR-00004-JHM, 2020 WL 114437, at *3 (W.D. Ky. Jan. 9, 2020) (denying compassionate release under subsection (D) where the record did not show that the movant was his relative's only available caregiver) (collecting cases).

Nor does the Court conclude that the defendant's moderate and treated sleep apnea, paired with the health of his mother, amount to extraordinary and compelling reasons

---

[1] Although this subsection begins with the modifier "[a]s determined by the Director of the Bureau of Prisons," most courts considering the issue post-First Step Act have concluded that the presence of "extraordinary and compelling circumstances" under this subsection can be determined by the BOP *or* by the court. *See, e.g.*, *United States v. Young*, No. 2:00-cr-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) (collecting cases).

7

warranting the requested fourteen-year sentence reduction. The record does not indicate that the defendant's mother is not currently being provided with necessary care. While it is possible that she would receive additional attention if the defendant were granted compassionate release to reside with her, the opposite might well be true. The defendant was living with his mother during the last two years of his leadership of the instant largescale methamphetamine conspiracy. [Doc. 638, ¶ 85].

Because the Court does not find extraordinary and compelling reasons justifying the requested compassionate release, the defendant's motion will be denied.

### 2. Danger to Any Other Person or to the Community

In the alternative, the Court also finds that the defendant has not shown that he would not be a danger if released. Guideline 1B1.13 provides that compassionate release is only appropriate where "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(2). Section 3142(g) outlines the factors the Court must consider in determining whether a defendant should be detained pending trial. Specifically, § 3142(g) provides:

> (g) Factors to be considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—

8

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The Court has considered the above-listed factors and has refamiliarized itself with the defendant's PSR. As for the nature and circumstances of the defendant's offense of conviction and the weight of the evidence against him, the defendant admittedly "sold significant quantities of methamphetamine to a large customer base . . . and had a significant number of people selling methamphetamine for him." [Doc. 638, ¶ 19]. At sentencing, the defendant's criminal history category was VI, with 20 countable criminal history points including convictions for assault, domestic abuse, and evading arrest along with multiple controlled substance convictions. [*Id.*, ¶¶ 43-70]. The defendant committed the instant offense while on probation. [*Id.*, ¶ 69]. These facts leave the Court unable to find that the defendant would not pose a danger to the safety of another person or the community if released. For this additional reason, the motion must be denied.

### 3. Section 3553(a) Factors

Because the defendant has not demonstrated extraordinary and compelling reasons justifying his release, and because the Court is not satisfied that he would not pose a danger

9

if released, the Court finds it unnecessary to engage in a lengthy discussion of the 18 U.S.C. § 3553(a) factors in this case. The Court adds only that roughly 75% of the defendant's sentence remains unserved. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("Despite Kincaid's assertion that the amount of time served is not a proper basis for denying compassionate release, the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). As in *Kincaid*, a substantial sentence reduction in this case would not reflect the extreme seriousness of the offense of conviction, would not promote respect for the law or afford adequate deterrence, and would not adequately protect the public from future crimes. *See* 18 U.S.C. § 3553(a)(2).

### III. CONCLUSION

For the reasons stated herein, Defendant's renewed motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [doc. 980] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge